UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HERMAN A. CAPPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:12-cv-01776-RLY-MJD |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Herman Capps requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends **AFFIRMING** the decision of the Commissioner.

**I.     Procedural History**

Capps filed an application for DIB and SSI on July 14, 2008, alleging an onset of disability of July 31, 2007. Capps' applications were denied initially on November 13, 2008 and on reconsideration on April 29, 2009. Capps requested a hearing on July 13, 2009. Administrative Law Judge James R. Norris ("ALJ") denied Capps' request for hearing on August 5, 2009 finding that Capps' request was untimely and Capps did not establish good cause for late filing. On August 27, 2010, finding that the ALJ's decision lacked reasoning, the Appeals Council remanded the matter back to the ALJ to determine whether good cause had been

established for the late filing. The ALJ then found that good cause was established and granted Capps' request for hearing which was held on April 27, 2011. The ALJ denied Capps' applications on July 13, 2011. The Appeals Council denied Capps' request for review on October 4, 2012, making the ALJ's decision the final decision for purposes of judicial review. Capps filed his complaint with this Court on December 5, 2012.

## II.     Factual Background

Herman Capps was 44 years old on the date of the alleged onset of disability. He has a high school equivalent education and no relevant past work experience. Capps alleges disability due to physical and mental impairments.

Looking first at Capps' physical impairments, Capps' has a history of heat exhaustion that began in the early 1990s. Capps reports that he may have been hospitalized five times due to heat exhaustion.

Capps has a history of low back pain. An x-ray of the lumbar spine was conducted in August 2008. The x-ray showed mild changes of spondylosis and mild facet arthropathy of the lower lumbar spine greatest on the left at L5-S1.

In September, 2008, Capps had a physical consultative examination with a state agency physician. The state agency physician reported that Capps had normal fine finger manipulation and normal range of motion. The doctor also reported that Capps was able to squat, can stand on heels and toes, and got on and off the exam table easily. The physician's impression included Hepatitis C, fatigue, muscle cramps, back pain, and chronic abdominal pain.

Capps was hospitalized in October 2008. A liver biopsy showed chronic hepatitis with mild activity and portal fibrosis. At discharge, Capps was diagnosed with severe abdominal pain; acute renal failure, resolved; hepatitis C; and hypotension, resolved.

2

In November 2008, Capps began physical therapy at Rebound at Bloomington Hospital. Capps was treated by Dr. Jack Moore in early November 2008 for complaints of pain in his back and occasional radiating pain into his right thigh. Dr. Moore listed Capps' prognosis as fair, but long duration of pain complaints. Among the list of problems, Dr. Moore listed Capps' impairments to be flexibility, pain, and range of motion; for functional limitations, Dr. Moore listed bending, sitting, standing, and walking. Capps missed several appointments in mid-November 2008. However, Capps returned to treatment and reported decreased pain improvements in moving and activity. Dr. Eric Bannec listed that his lumbar range of motion was normalizing and Capps was improving in pain and function levels. By late November, Capps had a setback when he reported an infection in his right knee.

In November 2008, state agency physician Dr. Ruiz completed a Physical RFC Assessment based on the report from the physical consultative examination. Dr. Ruiz opined that Capps could occasionally lift 50 pounds, frequently lift 25 pounds, and stand and/or walk (with normal breaks) about 6 hours in an 8-hour workday.

After the Physical RFC Assessment was completed, Capps had an MRI of the lumbar spine in December 2008 which showed severe stenosis and nerve impingement. This MRI was included and noted in the case analysis report completed in April 2009 by state agency physician Dr. Corcoran who affirmed Dr. Ruiz's RFC assessment. Dr. Corcoran also noted that even with the new MRI, Capps' impairments do not meet or equal any physical listing.

The record shows biopsies conducted in January 2009, but no other exams or treatments for that year.[1] In 2010, Capps received treatment from the Bloomington Hospital with treatment notes indicating that Christopher LaFollette, M.D. was Capps' primary care physician.

---

[1] There are treatment records with regard to Capps' vision impairment, however, Capps does not challenge the ALJ's finding on this issue.

In August 2010, Capps was seen in the emergency room at Bloomington Hospital for heat exhaustion. His physical examination was within normal limits and he denied any back, chest, or abdominal pain.

Capps was seen by Dr. Gary Gettelfinger in October 2010 with complaints of pain in his neck, back, and hands. Dr. Gettelfinger reported that Capps displayed obvious arthritis and swelling at the joints.

In November 2010, Dr. LaFollette completed a Physical Residual Functional Capacity Questionnaire. It was Dr. LaFollette's opinion that Capps could only sit for 20 minutes at one time and 4 hours in an 8-hour workday, stand for 15 minutes at one time and stand/walk for less than 2 hours total in a workday, and Capps needed to be able to shift position at will from standing, sitting, or walking. Dr. LaFollette also opined that Capps could never lift 50 pounds, rarely lift 20 pounds, occasionally lift 10 pounds and frequently lift less than 10 pounds. According to Dr. LaFollette, Capps could not perform any fine finger manipulations and needed to avoid exposure to fumes and chemicals.

At the hearing, Lee Fischer, M.D. testified with regard to Capps' physical impairments. Dr. Fischer testified that none of Capps' physical impairments, either singly or in combination, meet or equal any listing. Dr. Fischer did not agree with Dr. LaFollotte's restrictions and instead agreed with the assessments of the state agency physicians. It was Dr. Fischer's opinion that Capps could perform medium work but needed to avoid concentrated exposure to cold or heat, avoid concentrated exposure to humidity, and avoid working at unprotected heights and with hazardous machinery.

With regard to Capps' mental impairments, Capps was diagnosed with ADHD as an adolescent. He received treatment at Centerstone since August 2008 and Meadows Hospital

4

since January 2009. He has been diagnosed with substance abuse, depression not otherwise specified, and anger management problems.

In September 2008, Capps had a consultative examination with state agency physician Deborah Zera, Psy.D., HSPP. Dr. Zera reported that Capps evidenced adequate attention and impaired concentration and memory. She also reported that he was appropriate in his social interactions and his judgment and reasoning were intact. Dr. Zera's impression was that Capps suffered from ADHD, Cognitive Disorder not otherwise specified, Mood Disorder not otherwise specified, cannabis abuse and alcohol dependence. Dr. Zera suggested that memory testing was needed to determine the full extent of Capps memory impairment.

Thereafter, Dr. Zera held a follow-up consultative examination in October 2008. Dr. Zera administered the Wechsler Memory Scale –Third Edition ("WMS-III" or "memory test"). Capps scored in the low average to average range on the memory test. Based on the results of the memory test, Dr. Zera reported that Capps evidenced adequate attention, concentration and memory and he was appropriate in his social interactions. Dr. Zera also indicated that Capps did not meet the criteria for Cognitive Disorder and amended her impression to ADHD, Mood Disorder not otherwise specified, cannabis abuse, and alcohol abuse.

Later in October 2008, William Shipley, Ph.D. completed a Psychiatric Review Technique based upon Dr. Zera's consultative examination report. Dr. Shipley opined that, while Capps' ADHD fell under Listing 12.02 and his Mood Disorder fell under Listing 12.04, Capps' impairments did not meet or equal a listing. Dr. Shipley further indicated that Capps had only a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of

5

decompensation of extended duration. This assessment was affirmed in April 2009 by state agency physician Donna Unversaw, Ph.D.

At the hearing, Georgia Ann Pitcher, Ph.D. testified as to Capps' mental impairments. Dr. Pitcher testified that Capps has a mental disorder not otherwise specified, some attention problems, and polysubstance abuse. After reviewing the entire record, it was Dr. Pitcher's opinion that Capps' impairments did not meet or equal a listing. Dr. Pitcher also opined that simple and repetitive tasks would be an appropriate restriction in Capps' residual functional capacity.

### III.   Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[2] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two,

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV.   The ALJ's Decision

Applying the five-step analysis, the ALJ found at step one that Capps had not engaged in substantial gainful activity since July 31, 2007, the alleged onset date. At step two, the ALJ found that Capps had the following severe impairments: degenerative disc disease of the lumbar spine with a history of low back pain, a herniated lumbar disc, arthritis, hypertension, gastroesophageal reflux disease ("GERD"), a history of hepatitis C, a mood disorder not otherwise specified ("NOS"), attention deficit hyperactivity disorder ("ADHD"), dehydration with some ischemic colitis secondary to dehydration, and a history of drug abuse and dependence.

At step three, the ALJ determined that Capps did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The ALJ found that Capps had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). Specifically, the ALJ found that Capps can lift, carry, push or pull up to 50 pounds occasionally and 25 pounds frequently; Capps can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, and sit for a total of about 6 hours in a workday; Capps can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but should never climb ladders, ropes, or scaffolds; Capps is limited to no concentrated exposure to heat, cold, and humidity, and he should avoid all exposure to unprotected heights, operating heavy machinery, and unprotected hazardous machinery; Capps is also limited to simple, repetitive work.

At step four, the ALJ determined that Capps did not have any past relevant work. At step five, the ALJ determined that considering Capps' age, education, work experience, and RFC,

there were jobs that existed in the national economy that Capps could perform. Therefore, the ALJ determined that Capps was not disabled.

## V. Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Capps was not disabled. *Dixon*, 270 F.3d at 1176. Capps raises three arguments on review: 1) the ALJ erred at step three in not finding that Capps' impairments met or equaled Listing 1.02 and 12.02; 2) substantial evidence fails to support the ALJ's step five determination; and 3) the ALJ erred in not giving controlling weight to the treating physician. The Court finds that there is substantial evidence to support the ALJ's decision that Capps was not disabled.

### A. The Treating Physician

At the center of most of Capps' arguments is his reliance upon the treating physician, Dr. LaFollette. The ALJ discounted Dr. LaFollette's opinion as being unsupported by the medical record. Capps argues that Dr. LaFollette's opinion should have been given controlling weight. However, a treating physician's opinion is only entitled to controlling weight if it is supported by objective medical evidence. 20 C.F.R. 404.1527(a); SSR 96-2p, 1996 WL 374188 (July 2, 1996). Here, Dr. LaFollette's physical RFC assessment is not supported by the record, which Capps acknowledges. [Dkt. 25 at 3.] None of the treatment records from Bloomington Hospital where Dr. LaFollette was Capps' primary care physician indicate that Dr. LaFollette personally treated Capps. [R. at 927-72.] Although there is the presence of pain, the record does not indicate any treatment notes to support the limitations set out by Dr. LaFollette.

Capps argues that since Dr. LaFollette's opinion differs from the RFC, the ALJ was required to recontact Dr. LaFollette pursuant to Social Security Ruling ("SSR") 96-5p. SSR 96-5p requires an ALJ to recontact the treating physician "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record." SSR 96-5p, 1996 WL 374183 (July 2, 1996). Capps cites to *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) to support his position. However, this case is distinguishable as the Court finds that, given the testimony of the medical experts, there was enough evidence in the record for the ALJ to make a disability determination. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *Metzger v. Astrue*, 263 Fed.Appx. 529, 533 (7th Cir. 2008).

Even if the ALJ was required to recontact Dr. LaFollette, any error in failing to do so was harmless as the Court is not convinced that the outcome would be different. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013).

### B. Step Three

Capps next argues that the ALJ erred by not finding him disabled at step three. Capps asserts that his impairments meet or equal Listing 1.02 Major Dysfunction of a Joint due to his osteoarthritis and Listing 12.02 Organic Mental Disorders. The Commissioner asserts that the proper listing for osteoarthritis is Listing 14.09, but that, in any event, Capps does not meet either 1.02 or 14.09.

The burden is on the plaintiff to prove that his impairments meet or equal all requirements of a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Capps has not met this burden. With regard to Listing 1.02, Capps proclaims that he meets the Listing because Dr. LaFollette indicated that Capps could not perform any fine finger or gross movements. As

stated above, the ALJ did not err in discrediting Dr. LaFollette's assessment. Capps argues that Dr. Gettelfinger's diagnosis of osteoarthritis supports Dr. LaFollette's conclusion. However a mere diagnosis is insufficient to demonstrate that an impairment meets or equals a listing without the required medically acceptable imaging called for in the Listing. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02. Dr. Fischer was even questioned at the hearing by Capps' attorney about his osteoarthritis. Still, Dr. Fischer did not alter his conclusion that Capps' impairments did not meet or equal a listing.

Even assuming that Capps cannot perform any fine or gross movements, this is not the only requirement in the listing. Capps does not point to, and the Court did not find, anything in the medical record that Capps has signs of limitation of motion or other abnormal motion, or medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) as required by the listing. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02. There also isn't any support in the record to conclude that Capps meets Listing 14.09.

With regard to Listing 12.02, Capps argues that he meets this listing due to his memory problems. The ALJ specifically discussed this listing as well as Capps' memory problems. [Dkt. 12-2 at 24-26, 31] The ALJ referred to the memory test performed on Capps in 2008 administered by Dr. Zera. [R. at 25, 31, 541.] Dr. Zera indicated that Capps fell into the low average to average range of functioning, and that, based on the testing, Capps had adequate attention, concentration and memory and therefore did not meet any cognitive disorder. [R. 541.] Capps does not point to any medical evidence that there has been a worsening of his memory. Instead, Capps wants this Court to infer a worsening of memory due to his episodes of heat exhaustion. Capps admits that "nothing in the record specifically links Mr. Capps' memory problems with his repeated episodes of heat exhaustion," but Capps cites to medical websites to

11

support his theory. [Dkt. 18 at 13-14.] In light of the fact that Capps is not a doctor and there is no medical opinion in the record that indicates a worsening of Capps' memory sufficient to meet Listing 12.02, Capps has not met his burden. The ALJ also accounted for Capps' memory problems in the RFC by limiting him to simple, repetitive tasks.

There is substantial evidence, however, to support the ALJ's conclusion that Capps' impairments did not equal any listing, including Listings 1.02, 12.02 and 14.09. The ALJ relied on medical experts Drs. Fischer and Pitcher. Both doctors reviewed the medical record. Dr. Fischer concluded that, based on the record, Capps' physical impairments did not meet or equal any listing. Dr. Pitcher came to the same conclusion regarding Capps' mental impairments. As Capps has not provided any argument to discredit the opinions of the medical experts, substantial evidence supports the ALJ's finding at step three.

**C.     RFC**

Capps next argues that substantial evidence does not support the ALJ's RFC determination that Capps could perform medium work. Capps bases his argument on reports of Dr. LaFollette and Dr. Moore. As discussed above, the ALJ did not commit error by rejecting the opinion of Dr. LaFollette. Dr. Moore's treatment notes do indicate impairments in flexibility, pain, and range of motion as well as functional limitations in bending, sitting, standing, and walking. [R. at 867.] This assessment also seems to be based on Capps' subjective complaints. In any event, this treatment note from early November 2008 is only one of several treatment notes in that month and after missing several appointments, Capps reported that his pain and symptoms had decreased and that he was being more active. [R. at 875, 76] Treatment notes later in November 2008 also indicate that his range of motion was normalizing and Capps was improving in pain and function levels. [R. at 876.] Furthermore, the RFC was supported by Dr.

Fischer's testimony that, after reviewing the entire record, Capps could perform medium work with the limitations specified by the ALJ. [R. 49-50.] Therefore, substantial evidence supports the ALJ's RFC determination.

### D. Step Five

With regard to the ALJ's step five determination, Capps first argues that the jobs identified by the vocational expert ("VE") were all unskilled jobs that would not accommodate Capps' need to sit or stand at will.[3] This was a limitation recommended by Dr. LaFollette which was not adopted by the ALJ in his RFC determination. As the Court did not find error with the ALJ's rejection of Dr. LaFollette's opinion or with the RFC, this argument lacks merit.

Next, Capps argues that the cleaner position identified by the VE would entail exposure to fumes, a restriction specifically listed by Dr. LaFollette. As discussed previously, the ALJ did not err in discounting the opinion of Dr. LaFollette. Further, when Capps' attorney specifically asked Dr. Fischer about exposure to fumes, Dr. Fischer indicated that this would not be a problem. [R. at 52.] As this restriction was not identified in the ALJ's RFC assessment, this argument has no merit.

Finally, Capps argues that the jobs identified by the VE do not accommodate his memory and concentration limitation. The Court disagrees. As Capps points out, the positions all have a Specific Vocational Preparation ("SVP") score of 2 which is associated with unskilled work. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). "Unskilled work is work which needs little or no judgment to do *simple* duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568 (emphasis added). The ALJ specifically accounted for Capps' memory and concentration problems by limiting him to simple, repetitive work which is consistent with jobs

---

[3] The VE identified three jobs that Capps could perform: Hand Packager (DOT# 920.587-018), Stocker/Order Picker (DOT #922.687-058), and Vehicle and Equipment Cleaner (DOT# 919.687-014).

assigned an SVP of 2. Therefore, substantial evidence supports the ALJ's step five determination.

### VI.    Conclusion

For the reasons set forth above, substantial evidence supports the ALJ's determination that Capps is not disabled and the Magistrate Judge recommends that the Commissioner's decision be **AFFIRMED** and **DENY** Capp's Motion to Remand [Dkt. 19]. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 11/20/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Carwina Weng
IU SCHOOL OF LAW LAW CLINICS
wengc@indiana.edu

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov